IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROLANDO QUINTANILLA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-1965 |
| | § | |
| A & R DEMOLITION INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiffs in this FLSA collective action worked for A & R Demolition, Inc., a subcontractor on several construction sites. The plaintiffs ask this court to reconsider its August 30, 2005 memorandum and order granting summary judgment motions filed by two of the defendants, Satterfield & Pontikes ("Satterfield") and Swinerton Builders ("Swinerton"). These defendants were general contractors on the construction sites. The plaintiffs argue that the record showed sufficient evidence that Satterfield and Swinerton directed the plaintiffs' "means and methods" of work to raise fact issues as to whether those defendants are also the plaintiffs' "employers." (Docket Entry No. 68). Satterfield and Swinerton both filed responses and moved for entry of final judgment. (Docket Entry Nos. 67, 81). Based on a careful review of the parties' motions and responses, the record, and the applicable law, this court denies the motion for reconsideration and grants the motions for entry of final judgment as to Satterfield and Swinerton. The reasons are stated below.

**I.     Background**

An extensive statement of the background of this case is set out in this court's August 30, 2005 memorandum and order and is not repeated here. (Docket Entry No. 60). This court granted summary judgment as to the claims against Swinerton and Satterfield on the ground that the evidence would not permit a factfinder to hold them liable under the FLSA as employers of A & R's employees. (Docket Entry No. 60). The plaintiffs argue that this court failed appropriately to consider previously-submitted evidence showing that Swinerton and Satterfield exercised sufficient control over the A & R employees to raise fact issues as to whether they could be held liable as employers or as acting in the interest of the employer. (Docket Entry No. 68).

**II.    Analysis**

"A motion to reconsider an order . . . is appropriate when the court is presented with newly-discovered evidence, when the court committed clear error, when there is an intervening change in controlling law, or when other highly unusual circumstances exist." *Becerra v. Asher*, 921 F. Supp. 1538, 1548 (S.D. Tex. 1996), *aff'd*, 105 F.3d 1042 (5th Cir. 1997). None of these circumstances is present in this case.

No single factor is dispositive in determining whether a defendant is an "employer" under the FLSA. Courts should consider such factors as whether the purported employer's premises and equipment were used; whether liability could shift as a unit from one putative employer to another; the extent to which plaintiffs performed a discrete line-job that was integral to the purported employer's business; whether responsibility under the contract could

2

pass from one subcontractor to another without material changes; the degree to which the purported employer supervised the plaintiffs' work; and whether the plaintiffs worked exclusively or predominantly for the purported employer. *Woolridge v. Fischbach & Moore*, 234 F.3d 706 (5th Cir. 2000); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003); *see also Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990); *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir. 1968); *Welch v. Laney*, 57 F.3d 1004, 1010–11 (11th Cir. 1995). "[I]t is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). The plaintiffs do not contend that this court applied an incorrect legal standard.

Based on this legal standard and the summary judgment evidence, this court concluded that Satterfield's and Swinerton's supervision over A & R workers did not, as a matter of law, exceed that of a "typical, legitimate subcontracting arrangement." *Zheng*, 355 F.3d at 71–72. Even extensive supervision by a general contractor over a subcontractor's employees "weighs in favor of joint employment only if it demonstrates effective control of the terms and conditions of the plaintiff's employment." *Id.* at 74–75 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)).

In their motion for reconsideration, the plaintiffs focus on evidence in the summary judgment record that they contend shows that Satterfield and Swinerton supervisors hired and fired A & R workers. (Docket Entry No. 68 at 4, 7). The plaintiffs cite evidence that Wade Troxler, a Satterfield superintendent, and John Pruitt, a Swinerton superintendent,

3

"terminated" Michael Shane Henderson, an A & R supervisor, from the Juvenile Justice Center job site. The plaintiffs also argue that a Satterfield superintendent prevented A & R from firing one of its employees, Selwyn McMorris. (Docket Entry No. 68 at 4; Docket Entry No. 56 ¶ 16).

This court previously considered the evidence cited and found that it did not raise a fact issue as to whether Swinerton's and Satterfield's supervision over A & R's employees exceeded that of a general contractor and demonstrated effective control over the terms and conditions of their employment. As discussed in the August 30, 2005 opinion, the evidence showed that Satterfield and Swinerton personnel had the right to, and did, address the A & R employees' safety violations and contract performance. (Docket Entry No. 49, Ex. B; Docket Entry No. 45, Ex. 5, at 153). Such supervision is not inconsistent with "typical, legitimate subcontracting arrangement[s]," and did not rise to the level of joint employment, based on the "circumstances of the whole activity." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d at 71–72, 75; *see also Garcia v. Pace Suburban Bus Serv.*, 955 F. Supp. 75, 77 (N.D. Ill. 1996). As Swinerton points out in its reply, its superintendent testified that he "asked" that Henderson be removed from the job site and "couldn't do nothing" if A & R had refused to do so. (Docket Entry No. 81, p. 2). As Satterfield points out in its reply, the evidence showed that Henderson had repeated safety violations. The contract with A & R allowed Satterfield to remove an A & R employee from the job site for safety violations without creating a joint-employment relationship under the FLSA. (Docket Entry No. 73, p. 3). Evidence that Satterfield asked A & R to retain an employee does not give rise to an

4

inference that Satterfield had the right to hire or fire A & R employees or that Satterfield was the plaintiffs' "employer."

The plaintiffs also cite deposition testimony from Jay Davlin, a former A & R vice-president, that Satterfield controlled the "means and method" of the plaintiffs' work. (Docket Entry No. 68 at 5). The plaintiffs cite the following exchange:

> Q. But there are times, and you've seen times, when the general contractor gets involved and requests the sub to follow their means and methods, correct?
>
> A. On that project it did occur. That's—
>
> Q. It did occur?
>
> A. Yes.
>
> Q. Okay. And just to make sure I understand, you said it did occur—Satterfield did direct the means and methods of A&R demolition on that job site, i.e., the Texas State Hotel—excuse me, the Texas Juvenile Justice Center?
>
> A. The Harris County Juvenile Justice Center.
>
> Q. And the answer to that question is yes?
>
> A. Yes.
> . . . .
> Q. Do you know who Wayde Troxler is?
>
> A. Yes.
>
> Q. Is he the person at Satterfield—one of the persons that would direct your means and methods out there that we talked about?
>
> A. Yes.
> . . . .
> Q. You said Wayde Troxler directed your means and methods?

5

>    A.  Yes.
>
>    Q.  How so?
>
>    A.  I—directed what equipment I—to be utilized, which areas to work in, what procedures to utilize to achieve whatever result he was looking for.

(Docket Entry No. 68 at 6–7). "'Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.'" *Dutton v. Univ. Healthcare Sys., L.L.C.*, 136 Fed. Appx. 596, at *6 (quoting *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Repeating the phrase "means and methods" does not provide competent summary judgment evidence that Satterfield and Swinerton were plaintiffs' employers, particularly given the extensive and undisputed evidence as to their general-contractor relationship to the plaintiffs' employer. The plaintiffs submitted affidavits with similarly conclusory statements; they do not controvert the record evidence that Swinerton and Satterfield were general contractors, not employers of the subcontractor's workers.

Davlin's conclusory testimony that he received specific directions from Troxler does not raise a fact issue as to whether Satterfield employed the A & R workers. *See Zheng*, 355 F.3d at 71–72. Similarly, the plaintiffs' argument that Swinerton gave directives to A & R employees does not make Swinerton's role greater than that of a general contractor. In *Zheng*, the court explained the need to use great care in determining whether a general contractor is an FLSA "employer" of a subcontractor's workers, to avoid an approach that

would "classify nearly all subcontracting relationships as joint employment relationships—a result that finds no support either in the law or in our country's commercial practices." *Id.* at n.11. In *Moreau v. Air France*, 343 F.3d 1179, 1189 (9th Cir. 2003), the court held that a general contractor's supervision of a subcontractor's work was not "joint employment" because the instructions concerned the performance of the subcontract. Troxler's communications with Davlin, a former vice-president of A & R, are like those between the general contractor and subcontractor in *Moreau*. They are consistent with giving instructions regarding the performance of the contract and do not make the general contractor an employer of the subcontractor's workers.

The record shows that Satterfield and Swinerton do not have an ownership interest in A & R. They did not pay A & R employees or establish the prevailing wage rates. They did not maintain payroll or other records for the subcontractors' employees. They did not exercise general authority to hire and fire A & R employees. The evidence that they asked A & R to remove one superintendent from the job site because of performance issues relating to safety and encouraged A & R to retain another employee does not show a broad authority over personnel decisions. The evidence as to the specific type of instructions Swinerton and Satterfield gave A & R workers, or the frequency, does not raise a fact issue as to whether Swinerton and Satterfield had the right to control the details of the A & R employees' work, so as to become employers or joint employers as to those employees. (Docket Entry No. 49, Ex. B; Docket Entry No. 56, Ex. K, at 11). The motion to reconsider is denied.

  **B.**  **The Motions for Final Judgment**

>Federal Rule of Civil Procedure 54(b) provides:
>
>When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

FED. R. CIV. P. 54(b). This court granted summary judgment as to plaintiffs' claims against Satterfield and Swinerton in the August 30, 2005 memorandum and order. These defendants have no involvement in the remaining claims. There is no reason to delay entering final judgment as to both these defendants. Final judgment is entered by separate order.

## III.    Conclusion

The plaintiffs' motion to reconsider is denied. Final judgment as to Satterfield & Pontikes Construction, Inc. and Swinerton Builders is separately entered.

SIGNED on March 6, 2006, at Houston, Texas.

_____
          Lee H. Rosenthal
     United States District Judge