## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROLANDO QUINTANILLA, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-1965 |
| | § | |
| A & R DEMOLITION INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER GRANTING MOTION FOR APPROVAL
## OF CLASS SETTLEMENT AND ATTORNEYS' FEE AWARD

The plaintiffs, Rolando Quintanilla, Ramiro Torres, Jony Deras, David Escalante, Edgardo Lopez, Kenneth Matthews, Melvin Barrera, Daniel Chapa, Alberto Chapa, Morris Baugh, Francisco Rodriguez, Manuel Salazar Martinez, Darwin Antonio Enriquez, Jose Antonio Henriquez, Phillip Myers, Columbus Sargent, Angel Castro, Juan Manuel Suarez Torres, Valdemar Quintanilla, Antonio Rodriguez, Samuel Martinez, and Ricardo Suarez Torres, on behalf of themselves and others who had worked as nonexempt hourly wage employees performing manual labor at construction and demolition work sites in Texas for the defendants, A&R Demolition, Inc., Allstate Services, Ltd., Raymond Reveile LLC, Andrea C. Reveile, and Raymond L. Reveile (collectively "the A&R Defendants").  The plaintiffs alleged that the A&R Defendants owed them overtime compensation and other compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

On August 30, 2005, this court issued an order conditionally certifying a class, defined

as persons employed by the A&R Defendants to perform manual labor at construction and demolition work sites in Texas between May 14, 2001 to October 2005. Notice in a form approved by the court was mailed to current and former employees of the A&R Defendants on April 25, 2006. The notice period ended on July 10, 2006. Seventy-three current and former employees of the A&R Defendants timely opted in by returning the consent form. Two claimants returned consent forms after the deadline.

After extensive litigation, including discovery and motions practice, the plaintiffs and the A&R Defendants agreed to settle their disputes. They filed a proposed Settlement Agreement that, together with the exhibits, sets forth the terms and conditions for the proposed settlement and for dismissal of the action. The parties also filed a Joint Motion for Preliminary Approval of Class Settlement. This court held a hearing at which the parties presented testimony and counsel presented arguments. The court preliminarily approved the Settlement Agreement, including the terms and releases contained in the Settlement Agreement, as fair, reasonable, and adequate to the class. The court preliminarily approved the proposed allocation of settlement proceeds to each claimant. The court ordered class counsel to mail or cause to be mailed, by first class mail, postage prepaid, copies of the Notice of Class Action Settlement and Opportunity to Opt-Out of or to Object to Settlement Share, to each class member's last-known address.

The court approved, as to form and content, the class notice. The notice set out each for each claimant the estimated share of settlement proceeds. The date and time of the Settlement Fairness hearing was included in the class notice. The notice informed the class

members that if they wished to opt-out or exclude themselves from the class, they had to do so on or before February 29, 2008. The notice stated that all persons in the class defined under the Settlement Agreement terms, who did not timely request exclusion from the class, would be bound by the provisions of the Settlement Agreement, the releases, and the judgment. The notice informed the class members that the hearing was to determine whether the proposed settlement as set forth in the Settlement Agreement was fair, reasonable, and adequate and should be approved by the court, and whether final judgment should be entered.

The notice provided that any class member could appear and present arguments or evidence as to why the court should or should not: (a) approve the proposed settlement as set forth in the Settlement Agreement as fair, reasonable, and adequate; (b) enter the Order of Final Judgment and Dismissal as described in the Settlement Agreement, and (c) approve the procedures agreed upon by the representative plaintiffs. The notice also provided that any class member could object to the proposed settlement. Any person who wanted to be heard at the March 31, 2008 hearing had to file a notice of intent to be present on or before February 29, 2008.

The class notice was translated into Spanish for predominantly Spanish-speaking claimants. Additionally, the telephone number of class counsel was provided, and class counsel responded by phone to requests for additional information about the settlement. Spanish-speaking attendants were also available to respond to questions for Spanish-speaking claimants. Class counsel also met in person with several claimants who scheduled appointments to discuss the settlement.

3

The deadline for class members to object to the settlement or to opt out of the settlement was February 29, 2008.  No objections to the settlement were filed.   No class members chose to opt out of the settlement.

The settlement fairness hearing was held as scheduled on March 31, 2008.  The court heard testimony and arguments of counsel.  No one appeared to oppose or object to any aspect of the settlement.

## I.      The Standards for Approving the Class Settlement

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be . . . ."  29 U.S.C. § 216(b).  FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).  *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 350, 1353 (11th Cir. 1982).  If a settlement in an employee FLSA suit does reflect "a reasonable compromise over issues," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."  *Id*. at 1354.

The decision to approve a class action settlement is left to the district court's sound discretion.  *Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004); *In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220 (5th Cir. 2008).  The standard for whether a class action settlement should be approved is whether the settlement is "fair, adequate and reasonable" and has been entered into without collusion between the parties.

4

*See Newby*, 394 F.3d at 301; *Cotton*, 559 F.2d at 1330; *see also Lynn's Food Stores*, 679 F.2d at 1355.

The Fifth Circuit has directed that, in determining whether a class action settlement meets this standard, courts consider the following six factors: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Newby*, 394 F.3d at 301; *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).   Each factor is addressed below.

### A.    The Class Settlement Terms

Under the settlement, the defendants will pay a total sum of $400,000. $180,000 will be distributed to the class members.  $160,000 will be paid to class counsel for their attorneys' fees.  $60,000 will be paid to class counsel for expenses.

Each class member's share of the $180,000 was determined by a careful review of the documents and information produced during the discovery process, including but not limited to payroll records, time sheets, and witness information and testimony.  To determine each class member's share, class counsel multiplied an average of thirty hours of overtime per week by one and one-half times the regular hourly rate each class member was paid to

determine a weekly overtime amount owed to each class member.[1]  The number of weeks

that each class member worked was obtained from the "Vendor Activity Reports" produced

by the defendants.[2]  Class counsel multiplied the number of weeks worked by the weekly

overtime amount to determine the estimated overtime wages owed to each class member.

These estimated overtime wages were then apportioned among the class members so that

each receives a proportionate share of the $180,000 settlement proceeds, less $26,000 in

incentive awards and bonuses.  This final figure was calculated by dividing each class

member's estimated overtime and multiplying that figure by $154,000 ($180,000 - $26,000).

The method for apportioning the settlement funds is fair and reasonable and adequately

compensates each class member.

The original plaintiffs also received a $1,000 incentive award to compensate them for

the costs they incurred to participate in this litigation, including travel costs, notary charges,

and lost wages resulting from court appearances, interviews, and depositions.  Such awards

may be made in class-action lawsuits to compensate named plaintiffs for the services they

provide and burdens they shoulder during litigation.  *See, e.g.*, *De Hoyos v. Allstate Corp.*,

240 F.R.D. 269 (W.D. Tex. 2007) (approving award of $5,000 to named plaintiffs in Rule

23(b)(2) class action suit); *Camp v. Progressive Corp.*, No. Civ. A. 01-2680, 2004 WL

---

[1] Class counsel used this calculation to estimate overtime wages owed to all plaintiffs, but used an average of ten or twenty hours if a class member indicated in questionnaire responses that a lower average was more appropriate.

[2] Weeks worked by certain plaintiffs, which fell beyond the limitations period based on their date of consent to join the litigation, were not included in the calculations.

2149079 (E.D. La. Sept. 23, 2004) (approving award of $10,000 to named plaintiff and awards of $1,000 to $2,500 to other FLSA collective action members who assisted in litigation out of $5.4 million settlement fund); *Purdie v. Ace Cash Express, Inc.*, No. Civ.A. 301CV1754L, 2003 WL 22976611 (N.D. Tex. 2003) (approving award of $16,665 in incentive payments to the named plaintiffs out of $11 million settlement fund); *Henderson v. Eaton*, No. Civ. A. 01-0138, 2002 WL 3145728 (E.D. La. Oct. 25, 2002) (approving award of $3,000 to named plaintiff who participated extensively in litigation); *In re Lease Oil Antitrust Litigation* (No. II), 186 F.R.D. 403 (S.D. Tex. 1999) (approving awards of up to $10,000 per class representative out of $164.2 million settlement fund). This court finds that the $1,000 incentive award fairly and reasonably compensates the class representatives for the out-of-pocket expenses incurred and wages lost in assisting with this litigation.

### A.    There is No Evidence that the Settlement was Obtained by Fraud or Collusion

The parties were represented by experienced counsel. The settlement was reached through arms-length negotiations after a long, hard-fought mediation with a neutral. Under such circumstances, courts find that class action settlements are free of fraud or collusion. *See Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 527 (N.D. Miss. 2003) (court had no reason to believe that fraud or collusion played role in negotiations and objectors did not suggest otherwise); *In re First Databank Antitrust Litig.*, 205 F.R.D. 408, 412 (D.D.C. 2002) ("[T]here is no reason to question [counsels'] assertion that the settlement agreement is anything but the product of extensive arm's-length negotiations . . . undertaken in good faith

after substantial investigation and legal analysis."); *San Antonio Hispanic Police Officers' Org.*, 188 F.R.D. at 458.

**B.   Litigation of this Case Would Likely be Complex, Expensive, and Protracted**

In determining whether to approve the settlement, a court must also consider the complexity, expense, and likely duration of the litigation.  If this case were to be tried, the class would face extensive costs and delay.  In the course of the trial on the merits, defendants would assert numerous legal and factual defenses, which would require extensive additional discovery.  There would likely be "substantial time and expense devoted to motion practice, likely appeals from those motions, multiple trial preparations, trials, and appeals from trials." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1013.  This would not only expand the class's costs but also further delay any recovery by the class. *See, e.g., Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  The delay is particularly risky in this case because the class members move frequently and the passage of time would make it more difficult to locate the members and increase the risk that they would receive no relief.

**C.   The Litigation Has Reached a Stage at Which the Parties Can Accurately Assess Whether Settlement is Beneficial to the Class**

The parties completed precertification discovery and an extensive certification hearing.  The parties engaged in discovery before the settlement negotiations and investigated the plaintiffs' claims.  The discovery and investigation that occurred before, during, and after the settlement  negotiations enabled counsel for all parties thoroughly to assess the legal and factual merits of the claims. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235-36 (3d Cir.

8

2001).

**D.      There is a Clear Possibility that Plaintiffs Would Not Prevail on the Merits**

The A&R Defendants asserted numerous affirmative defenses, including the statute of limitations as to certain class members.  The ability of certain class members to obtain any recovery would be hotly contested.  The records available were incomplete.  Even if the class were to remain certified, it is far from certain that all class members would prevail on the merits.  This possibility supports approval of the settlement as fair and reasonable.  *See, e.g., Parker*, 667 F.2d at 1210.

**E.      The Range of Possible Recovery and Certainty of Damages Supports the Class Settlement**

Prevailing plaintiffs in FLSA cases are entitled to back wages, liquidated damages in an equal amount, attorneys' fees, and litigation costs.  *See* 29 U.S.C. § 216(b).  There are also civil penalties if there is a finding that the violation was "willful."  *See* 29 U.S.C. § 216(b).


The settlement will pay each class member a fair recovery in relation to the time each worked.  (*See* Docket Entry No. 177, Exhibit 1).  Taking into account the risks inherent in this litigation, as well as the costs of litigation, the settlement amount is fair and reasonable.  *Cf. Parker*, 667 F.2d at 1210 n.6 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not" indicate that the settlement is not fair and reasonable) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974)).

9

6.      **The Opinions of Class Counsel and Class Members Support the Settlement**

When evaluating the fairness, adequacy, and reasonableness of a settlement, courts consider the opinions of experienced counsel. *See In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 106 (D.D.C. 2004); *San Antonio Hispanic Police Officers' Org.*, 188 F.R.D. at 461. In reviewing the opinions of counsel, a court should bear in mind that counsel for each side possess the unique ability to assess the potential risks and rewards of litigation. *San Antonio Hispanic Police Officers' Org.*, 188 F.R.D. at 461.

The settlement is the product of extensive arms-length negotiations, undertaken in good faith after substantial factual investigation and legal analysis by counsel for both parties. Negotiations included numerous face-to-face and telephone conferences, as well as a full day of mediation before a retired judge and a sitting magistrate judge. The mediations included thorough presentations by both parties of the facts and the law. Counsel for both parties endorse the settlement. This factor weighs in favor of approval. *E.g., FTC v. Mylan Labs, Inc. (In re Lorazepam & Clorazepate Antitrust Litig.)*, 205 F.R.D. 369, 375–76 (D.D.C. 2002).

The court should also consider the reaction of the class to the settlement when, as here, notice was properly provided. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (holding that lack of substantial objection indicated that class appeared to be overwhelmingly in favor of settlement) (quoting

4 HERBERT S. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41, at 108 (4th ed. 2002); *see also Maher*, 714 F.2d at 456 (noting that a minimal nature of objections is a factor that favors approval); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1018 (a "diminutive amount" of objectors may signify that a settlement is fair); *Mylan Labs.*, 205 F.R.D. at 378 (the existence of relatively few objections certainly militates in favor of approval). Here, there were no objections to the settlement. None of the class members elected to opt out of the settlement. This indicates that the class is overwhelmingly in favor of settlement.

The notice provided to potential claimants satisfied all applicable requirements. Notice approved by this court was mailed on April 25, 2006 by first class mail, postage prepaid, to all Class Members who could be identified by Class Counsel and Defense Counsel with reasonable effort at each Class Member's last known address. This notice described the nature of the underlying lawsuit, and the claims asserted in the action. The Class Notice was translated to Spanish. The notice was sent to all class members who could be identified with reasonable effort. Fifty-seven workers joined this lawsuit following the court-approved notice by returning their signed consent forms. This includes two claims that were postmarked after the filing deadline.

Notice was also sent to each class member of the opportunity to object and/or opt out of the settlement. Notice was mailed by first class mail, postage prepaid, to all class members on January 18, 2008. (*See* affidavit of Lauren Harris, Docket Entry No. 180). This notice described the nature of the underlying lawsuit, the claims asserted in the action, and

the terms of the settlement.  It also explained how to object or opt out of the settlement, the consequences of opting out, identified the lawyers representing the class, explained how attorneys' fees would be paid, and identified the date and location of the fairness hearing. The notice also provided the amount of each class member's proportionate share of the settlement.

The deadline for class members to object to the settlement, or to opt-out of the settlement was February 29, 2008.  There were no objections to the settlement filed. Additionally, no class members chose to opt out of the settlement.

In sum, the opinions of counsel and of representative class members support approval of the settlement.  The absence of objections and opt outs also supports approval.

## III.   The Amount of Attorneys' Fees is Fair and Reasonable

Under the settlement, class counsel will receive a total of $220,000. A sum of $160,000 will be paid as attorneys' fees; a sum of $60,000 will be paid to compensate class counsel for their expenses.

The FLSA has a fee-shifting provision, which allows the prevailing party to recover its attorney fees and litigation costs.  The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b) (emphasis added).  In FLSA collective actions, the court must determine the reasonableness of the proposed attorneys' fee as part of the fairness determination.  *See, e.g. Strong v. BellSouth Telecomms.*, 137 F.3d 844, 849-50 (5th Cir. 1998).  The party seeking attorneys'

fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualification and skill.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

To fulfill its duty, "the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties." *Strong,* 137 F.3d at 850. Although exacting judicial review of fee applications may be burdensome, it is "necessary to discharge the [court's] obligation to award fees that are reasonable and consistent with governing law." *Manual for Complex Litigation* § 14.231 (4th ed. 2004).  *See also* FED. R. CIV. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

This circuit requires district courts to use the "lodestar method" to "assess attorneys' fees in class action suits." *Strong,* 137 F.3d at 850.  The district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney. *Id.* The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate.  *Id.*  The district court may adjust the lodestar upward or downward after a review of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[3]  After the court calculates the lodestar, it must scrutinize a fee award and not merely "ratify a pre-arranged compact."

---

[3] A district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in *Johnson*, 488 F.2d at 717–19 (5th Cir. 1974).  *See Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003).  In this case, the parties have agreed to a fee award that is below the lodestar amount for the plaintiffs' lawyers.  The *Johnson* factors are not applied to increase or decrease the amount.

*Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir.1980) (holding that by summarily approving attorneys' fees presented in an unopposed settlement agreement, the district court "abdicated its responsibility to assess the reasonableness of the attorneys' fees proposed under a settlement of a class action, and its approval of the settlement must be reversed on this ground alone").

The first step in the computation of the lodestar is determining a reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1317 (M.D. Fla. 2001) (citing *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996)). The party seeking fees bears the burden of establishing the market rate and should present the court with "specific and detailed evidence" from which the court can determine the reasonableness of the proposed rate. *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). A fee applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Id.* at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303.

The second step in the lodestar analysis is to determine the number of hours that were reasonably expended on the litigation. The fee applicant bears the burden of establishing entitlement and documenting the reasonableness of the hours expended. *Hensley v. Eckerhart, supra*, 461 U.S. at 433 (if an applicant's documentation "is inadequate, the district

court may reduce the award accordingly").

Counsel for the plaintiffs submitted billing records for each of the lawyers in the law firms working on this case, which this court has reviewed. The lawyers have also submitted affidavits describing the nature and amount of the work performed. (Docket Entry No. 186). Three law firms represented the plaintiffs in this collective action: Johnson Spalding, Doyle, West & Trent, L.L.P.; Klitsas & Vercher, P.C.; and The Law Office of Michael E. Frachtman. Klitsas & Vercher waived its fees and will receive a proportionate share of the expenses. The Johnson Spalding lawyers spent more than 1900 hours in attorney time in the prosecution of this case. (Docket Entry No. 177, Exhibits 3 & 4). The partners billed at rates ranging from $275 to $350 per hour and associates billed at a rate of $200 per hour. Paralegals charged approximately 119 hours at a rate of $100 per hour. *Id*. Based on the hours billed and the rates normally charged, the Johnson Spalding firm has incurred more than $579,985 in fees for the work of lawyers and legal assistants on this case, an amount substantially more than the total settlement and more than the lawyers seek in the fee award. *Id*.

The third law firm, Michael E. Frachtman, worked on the case to assist Johnson Spalding after Klitsas & Vercher's involvement ended. Frachtman spent approximately 226 hours working on the case at a rate of $150 per hour. (*See* Exhibit A, aff. of Michael Frachtman). Frachtman estimates that he has incurred approximately $39,775 in attorney's fees in this matter.

This case has been pending for over three years. The parties have engaged in

extensive discovery and motion practice.  Both sides have reviewed over 60,000 documents produced during discovery.  The plaintiffs have responded to over 440 sets of interrogatories, requests for production, and requests for admission on behalf of the representative and consent plaintiffs.  Approximately four depositions have been taken.  Settlement discussions were protracted and difficult, requiring extensive attorney time.  Communications with clients were also time-consuming.  The lawyers have spent more than 2,100 cumulative hours on this case.  The lodestar calculation shows that the number of hours spent to prosecute the case was reasonable.  The hourly rates for the fee sought by the lawyers is an average of less than $100 per hour.  These rates are substantially lower than the prevailing market rates in the Houston legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  (*See* Docket Entry No. 177, Exhibit 3).  This amount is reasonable.

The amount of attorneys' fees reflects a 40% contingent fee arrangement with the representative plaintiffs, and an amount well below the lodestar.  To facilitate the settlement, plaintiffs' counsel have agreed to accept a recovery of attorneys' fees in an amount substantially less than their standard rates.  The total fee award sought is reasonable.

This court must not only approve the overall amount of the fee award but also the allocation to specific law firms.  *In re High Sulfur Content Gasoline Products Liability Litigation,* 517 F.3d 220, 228–30 (5th Cir. 2008).  The record includes the attorneys' time and expense statements and affidavits.  The record contains a breakdown of the hours and rates for each attorney.  The parties have provided an adequate factual basis for their proposed fee

allocation.  Johnson Spalding, which expended over 1900 hours litigating this case, will receive 75% of the attorneys' fees.  Michael E. Frachtman, who expended approximately 230 hours litigating this case, will receive 25% of the attorneys' fees.  This is a reasonable allocation that takes into account Frachtman's role in the case; his participation in discovery as well as in all hearings and settlement conferences; and his efforts in locating class members and communicating with them.  The allocation of fees between the class counsel is reasonable and supports approval of the settlement agreement.

Class counsel have also incurred expenses and costs in the amount of $71,159, yet seek recovery of $60,000.  (*See* Docket Entry No. 177, Exhibits 3 and 4).  Costs other than attorneys' fees are allowed as a matter of course to the prevailing party unless the court otherwise directs.  FED. R. CIV. P. 54(d).  Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award.  *Wales*, 192 F. Supp. 2d at 1329.  The expenses and costs are reasonable.

The distribution of settlement proceeds to the class members and to class counsel is also reasonable.  Under the settlement agreement, the A&R Defendants will make a payment of $50,000 within 35 days after a final order approving the settlement agreement is entered. The A&R Defendants will make a second payment of $50,000 within 120 days after a final order approving the settlement agreement is entered.  The A&R Defendants will pay the remaining $300,000 in monthly installments of $6250 per month, beginning 150 days after

a final order approving the settlement agreement is entered.  The first two payments of $50,000 will be distributed by class counsel exclusively to the class members based on their pro rata share of the settlement proceeds.  The subsequent monthly payments will initially be allocated to class counsel to cover their costs and expenses in the amount of $60,000. Once these costs are paid, the remaining monthly payments will be allocated to the class members until they have each received their pro rata share of $180,000.  Any subsequent payments will be allocated to class counsel to cover their attorneys' fees.  It is appropriate to defer the fee award until the class members receive actual payouts.  *See* FED. R. CIV. P. 23(h) cmt. h.

## IV.    Conclusion

The parties' settlement agreement is approved as fair, adequate, and reasonable.  This court finds that the settlement is in the best interest of the class.  This court retains jurisdiction over all proceedings arising out of or related to the settlement agreement.  This court will enter a separate final judgment dismissing the plaintiffs' action on the merits, with prejudice.

SIGNED on May 7, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge